# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOUGLAS STUNTZ** | **CIVIL ACTION NO.: 6:20-cv-00182** |
| **VERSUS** | **JUDGE: MICHAEL J. JUNEAU** |
| **WRIGHT ENRICHMENT, INC.** | **MAG. JUDGE: CAROL B. WHITEHURST** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S SUPPLEMENTAL, AMENDING, AND RESTATED COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Douglas Stuntz, who respectfully opposes Defendant's Partial Motion to Dismiss Plaintiff's Supplemental, Amending, and Restated Complaint.

RESPECTFULLY SUBMITTED,

By: __/s W. Brett Conrad, Jr. _____
Jill L. Craft, T. A., Bar Roll No. 20922
W. Brett Conrad, Bar Roll No. 37639
330 Government Street
Baton Rouge, LA 70802
Telephone: (225) 663-2612
Facsimile: (225) 663-2613

i

# **TABLE OF CONTENTS**

COVER PAGE ..................................................................................................................i

TABLE OF CONTENTS ................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................iii

    I.    FACTS ..................................................................................................1

    II.    LAW & ARGUMENT .........................................................................4

        A.  Legal Standard ..............................................................................4

        B.  Disability-Based Discrimination and Harassment ...........................4

        C.  Title VII Retaliation .......................................................................5

        D.  L. R.S. 23:967 ..................................................................................6

        E.  La. R.S. 30:2027 ........................................................................... 11

    III.    CONCLUSION ................................................................................. 12

CERTIFICATE OF SERVICE ..................................................................................... 13

# **TABLE OF AUTHORITIES**

**Constitution, Statutes, Rules, and Regulations**

29 U.S.C. §651 ................................................................................................................2, 3

29 U.S.C. §653 ....................................................................................................................7

29 U.S.C. §654 ....................................................................................................................7

29 USC §2601 .....................................................................................................................1

42 U.S.C. §2000(e) ..................................................................................................... 1, 2, 3

42 U.S.C. §9601 ................................................................................................................ 10

42 U.S.C. §9602 ...............................................................................................................2, 3

42 USC §9607 .................................................................................................................. 10

42 USC §9659 .................................................................................................................. 10

42 USC §12112 ...............................................................................................................4, 5

Fed.R.Civ.P. Rule 8 .........................................................................................................3, 4

Fed.R.Civ.P. Rule 12 ..................................................................................................... 3, 4, 5

La. R.S. 23:13 ............................................................................................... 1, 2, 3, 6, 7, 8

La. R.S. 23:301 ........................................................................................................... 1, 3, 6

La. R.S. 23:967 .............................................................................................1, 4, 6, 7, 9, 11

La. R.S. 30:2101 ....................................................................................................... 2, 4, 5, 8

La. R.S. 30:2027 .................................................................................................3, 9, 10, 11

La. R.S. 30:2101 .........................................................................................................2, 3, 6, 8

La. R.S. 30:2117 ..................................................................................................................8

La. R.S. 30:2119 ..................................................................................................................8

La. R.S. 47:1641 ..................................................................................................2, 3, 6, 8, 11

La. R.S. 47:1951 .......................................................................................................2, 3, 6, 10

LAC Title 33, Part XV ..............................................................................................2, 3, 4, 6, 8

**Cases**

*Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664 (5th Cir. 1989) .......................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................4

*Bell Atlantic Corp., v. Twombly*, 550 U.S. 544 (2007) .................................................................4

*Borcik v. Crosby Tugs, LLC*, 2016-CQ-1372 (La. 5/3/17), 222 So.3d 672 ................................. 12

*Carr v. Sanderson Farms, Inc.*, 2016 CA 1064 (La. App. 1 Cir. 2/17/17), 215 So.3d 437 ........... 7

*Cheramie v. J. Wayne Plaisance, Inc.*, 595 So.2d 619 (La. 1992) ............................................. 12

*Den Hartog v. Wasatch Academy,* 129 F.3d 1076 (10th Cir. 10/28/97) .........................................5

*Dobyns v. Univ. of La. Sys.,* 2018 CA 0811 (La. App. 1 Cir. 4/12/19), 275 So.3d 911 .................6

*Evans v. Smith*, 2014 U.S. Dist. LEXIS *1 (W.D. La. 8/5/14) .......................................................1

*Flowers v. S. Regional Physician Servs., Inc.*, 247 F.3d 229 (5th Cir. 2001) ...............................5

*Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 6/30/16) ...........................................................................1

*Graves v. Gillyard*, 35750 (La. App. 2 Cir. 4/23/02), 835 So.2d 1 .................................................6

*Iberiabank Corp. v. Ill. Union Ins. Co.,* 953 F.3d 339 (5th Cir. 3/18/20) .......................................3

*Larimer v. IBM Corp.*, 370 F.3d 698 (7th Cir. 6/3/04) ...................................................................5

*Melancon v. Town of Amite City*, 2018 CA 0442 (La. App. 1 Cir. 9/24/18), 261 So.3d 7 ............6

*Menard v. Targa Res. LLC*, 2019 U.S. LEXIS 152538 *1 (M.D. La. 9/6/19) .........................9, 12

*Rando v. Anco Insulations Inc.*, 08-C-1163 (La. 5/22/09), 16 So.3d 1065 ..................................7

*Smith v. Univ. Health Shreveport, LLC*, 2019 U.S. Dist. LEXIS 40437 *1 (W.D. La. 2/25/19) ..4

*Stansbury v. Sewell Cadillac-Chevrolet*, 2003 U.S. Dist. LEXIS 1682 *1 (E.D. La. 2/4/03) .......7

*Swierkiewicz v. Sorema NA*, 534 U.S. 506, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002) .............4

*Uniroyal Chem. Co. v. Deltech Corp.*, 160 F.3d 238, 242 (5th Cir. 1998) *rehearing granted, in part, Uniroyal Chem. Co. v. Deltech Corp.*, 160 F.3d 238 (5th Cir. 1999) ....................................9

*Wyerick v. Bayou Steel Corp.*, 887 F.3d 1271 (5th Cir. 1989) .......................................................4

**<u>Other Authorities:</u>**

S. Rep. No. 96-848, at 13 (1980) ....................................................................................................9

MAY IT PLEASE THE COURT:

Plaintiff's claims against defendant are as follows: (1) FMLA interference, (2) FMLA retaliation, (3) disability-based discrimination and harassment under the ADA and LEDL, (4) Title VII retaliation, (5) reprisal under La. R.S. 23:967, and (6) retaliation/reprisal under La. R.S. 30:2027.[1] Defendant does not challenge Mr. Stuntz's claims for FMLA interference or retaliation.[2] For purposes of Mr. Stuntz's La. R.S. 23:967 claim, defendant also does not challenge the underlying violations of law under LEDL, La. R.S. 23:301, *et seq.*, and federal law, Title VII, 42 USC §2000e-3, *et seq.*, FMLA, 29 USC §2601 *et seq*. These issues are not before the Court and any challenge is thus waived.[3]

In its now second Motion to Dismiss under Fed.R.Civ.P. Rule 12(b)(6), defendant posits the same arguments from its initial Motion to Dismiss as to Mr. Stuntz's claims for: (1) disability-based discrimination and harassment under the ADA and LEDL, (2) Title VII retaliation, and (3) reprisal under La. R.S 23:967. Plaintiff adopts by reference and re-urges all arguments set forth in his initial Memorandum in Opposition to defendant's Partial Motion to Dismiss, (Rec. Doc. 11), as if quoted herein in its entirety.

**I.     FACTS**

Mr. Stuntz was hired as a Plant Manager at Defendant's facility located in Crowley, Louisiana, on June 6, 2017.[4] Beginning in November, 2018, and continuing thereafter until Mr. Stuntz was terminated, he was subjected to unwelcome acts by defendant constituting disability-

---

[1] Plaintiff does not allege a failure to accommodate claim under the ADA or LEDL. He does not allege an ADA retaliation claim. Defendant's argument is moot.
[2] While defendant's brief references it seeks to dismiss plaintiff's FMLA interference claim, it posits not actual argument in support. *Compare* (Rec. Doc. 5-1) *with* (Rec. Doc. 20-1). To extent the Court finds this issue sufficiently raised, Plaintiff adopts all arguments in opposition as set forth in its original Memorandum in Opposition. (Rec. Doc. 11).
[3] *See Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 6/30/16); *Evans v. Smith*, 2014 U.S. Dist. LEXIS *1, *19 (W.D. La. 8/5/14).
[4] (Rec. Doc. 14, ¶4).

1

based harassment and discrimination.[5] On March 4, 2019, Mr. Stuntz was terminated on account of Mr. Stuntz's request for FMLA, his affiliation with his disabled wife, and his protected activities regarding defendant's violations of federal and state law, *infra*.

During the summer of 2018, Mr. Stuntz was ordered by defendant, through Wright, under penalty of termination, to tell Parish tax authorities that buildings marked "DEMO" were not being used, when, in fact, they were actively being used and should have been taxed.[6] Defendant, through Wright, did so to manipulate the assessment of defendant's property to avoid paying taxes on the buildings as part of the property. Defendant's actions/inactions violated La. R.S. 47:1641, *et seq.*, and 47:1951. Mr. Stuntz further opposed defendant's unlawful request and told defendant, through Wright, that his requests were illegal and violated the law, to no avail.

Also, during the summer of 2018, Mr. Stuntz discovered that defendant possessed a radioactive drill pipe on its property without disposing/removing it through an authorized radioactive waste disposal facility.[7] Mr. Stuntz reported this to defendant, through Wright. In response, Wright ordered Mr. Stuntz to bury the radioactive drill pipe on its property because he, Wright, did not want to have to pay someone to legally and properly remove it. Mr. Stuntz opposed defendant's unlawful request and stated to defendant, through Wright, that "he could not do that" and defendant would need to find a way to "legally" dispose of the radioactive material. Defendant continued to allow the radioactive pipe to remain on defendant's property without removing and disposing of it in compliance with law, all in violation of state law, including La. R.S. 23:13, La. R.S. 30:2101, *et seq.*, LAC Title 33, Part XV, OSHA, 29 U.S.C. §651, *et seq.* and federal law, CERCLA, 42 U.S.C. §9602 *et seq.*

---

[5] (Rec. Doc. 14, ¶¶5-12).
[6] (Rec. Doc. 10-2, ¶13).
[7] (Rec. Doc. 10-2, ¶14).

During this same time period, Mr. Stuntz discovered mold on the ceiling of the Research and Development building.[8] Mr. Stuntz reported and advised Wright of the discovery of the hazardous mold and stated that he and defendant's employees could not continue work in the area due to the mold. Defendant, through Wright, refused to remediate the mold. Instead, Wright ordered Mr. Stuntz to "hid[e]" the mold. Mr. Stuntz refused. Wright then ordered Mr. Stuntz to have defendant's employees, and/or hire temporary workers, cover up and remove the mold in order to avoid paying for its legal removal. Again, Mr. Stuntz opposed, stating that doing so would expose all employees to hazardous mold. Mr. Stuntz further stated to Wright that removal of the mold had to be done "professionally" and in accordance with law. Defendant intentionally left the mold on the building's ceiling, which exposed Mr. Stuntz and other employees to the hazardous mold. Mr. Stuntz contends this violates La. R.S. 23:13 and La. R.S. 30:2101, *et seq.*

In violation of La. R.S. 23:13, defendant failed to properly dispose of the radioactive pipe and remediate the mold.[9] As result, Mr. Stuntz and other defendant's employees were forced to work in a hazardous and unsafe condition.

Ultimately, Mr. Stuntz was fired, in part, for his disclosure, opposition, and reporting of defendant's violations of state and federal law, including La. R.S. 23:13, La. R.S. 23:301, *et seq.*, La. R.S. 30:2101, *et seq.*, La. R.S. 47:1641, *et seq.*, La. R.S. 47:1951, LAC Title 33, Part XV, OSHA, 29 U.S.C. §651, *et seq.,* CERCLA, 42 U.S.C. §9602 *et seq.*, Title VII, 42 U.S.C. §2000e, *et seq.*, and LAC Title 33, Part XV. Defendant is liable for its retaliatory termination of plaintiff under La. R.S. 23:967, La. R.S. 30:2027, and Title VII, 42 U.S.C. §2000e-3.

---

[8] (Rec. Doc. 10-2, ¶15).
[9] (Rec. Doc. 10-2, ¶16).

## II.   LAW & ARGUMENT

### A.   Legal Standard

Fed.R.Civ.P. 12(b)(6) provides for a dismissal for failure to state a claim upon relief can be granted.[10] These motions are viewed with disfavor and rarely granted.[11] The Court must take the allegations as true and evaluate the allegations in a light most favorable to the non-moving party. All doubts as to the sufficiency of the claim must be resolved in favor of the non-moving party. However, in the event a Court is inclined to grant a Fed.R.Civ.P. Rule 12(b)(6) Motion, the plaintiff is afforded the opportunity to amend.

Pursuant to Fed.R.Civ.P. Rule 8(a)(2), Mr. Stuntz need only set forth a short and plain statement entitling him to relief. His claims for relief should simply be "plausible" on the face of the Complaint.[12] Nothing more is required.[13] The allegations are sufficient where there exists enough factual content for the Court to draw a reasonable inference the defendant is liable for the alleged misconduct.[14] Here, Mr. Stuntz sets forth his claims with facial plausibility and defendant's Motion thus fails.

### B.   Disability-Based Discrimination and Harassment

Mr. Stuntz sets forth a cause of action for associational discrimination under 42 U.S.C. §12112.[15] When enacted in 1990, the ADA statutorily prohibited associational discrimination/harassment based on disability. As stated by *Den Hartog v. Wasatch Academy,* 129 F.3d 1076 (10th Cir.

---

[10] Fed.R.Civ.P. Rule 12(b)(6).
[11] *Iberiabank Corp. v. Ill. Union Ins. Co.,* 953 F.3d 339, 345 (5th Cir. 3/18/20).
[12] *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 555 (2007).
[13] *Swierkiewicz v. Sorema NA*, 534 U.S. 506, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002); *Smith v. Univ. Health Shreveport, LLC*, 2019 U.S. Dist. LEXIS 40437 *1, *6-7 (W.D. La. 2/25/19).
[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[15] Disability-based discrimination and harassment claims under the LEDL, La. R.S. 23:323, are analyzed using the same framework with ADA claims. *Wyerick v. Bayou Steel Corp.*, 887 F.3d 1271, 1274 (5th Cir. 1989). On this point, defendant agrees. Hence, Mr. Stuntz maintains a cause of action under the LEDL for associational discrimination and harassment for the same reasons as he does under the ADA.

4

10/28/97), the ADA outlaws employer discrimination and harassment of an employee as a result of his/her spouse's disability which was known by the employer. *See* 42 U.S.C. §12112(b)(4). Later, in *Larimer v. IBM Corp.*, 370 F.3d 698 (7th Cir. 6/3/04), the Court expanded upon *Den Hartog* and provided examples of what may constitute associational discrimination. In accord with *Larimer*, associational discrimination included termination because of the employee's "association" with a qualified individual with a disability. In 2009, when the ADA was amended by the ADAA, setting forth, specifically associational discrimination. Here, Mr. Stuntz alleges in Paragraphs 5-8, 18 that defendant knew his wife (with him he is associated) was disabled and terminated him as a result.

Additionally, Mr. Stuntz sets forth a cause of action for disability-based harassment. Under *Flowers v. S. Regional Physician Servs., Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001), Mr. Stuntz alleges in Paragraphs 6-8 that defendant knew he was associated with his disabled wife and as a result, subjected him to severe and pervasive harassment on a weekly basis culminating in his termination.

Plaintiff adopts by reference and re-urges all arguments set forth in his initial Memorandum in Opposition to defendant's Partial Motion to Dismiss, (Rec. Doc. 11), as if quoted herein in its entirety.

### C. Title VII Retaliation

Mr. Stuntz alleges a cause of action under Title VII. Defendant's sole challenge is that Mr. Stuntz did not set forth a Title VII retaliation claim in his EEOC Charge of Discrimination. However, Mr. Stuntz clearly set forth on the face of his Supplemental, Amending, and Restated Complaint that he timely filed a Charge of Discrimination with the EEOC, he received his Notice of Right to Sue, and thereafter timely filed suit, including his Title VII retaliation claim. On the

face of the pleadings, to which defendant's Motion is limited, Mr. Stuntz alleges he met all preconditions to suit under Title VII.

To the extent the Court considers the two (2) page summary document typed up by the EEOC, which defendant attaches to this Motion, Fed.R.Civ.P. Rule 12(d) requires the Motion be converted to a Motion for Summary Judgment. As a result, this Court should consider the entirety of Mr. Stuntz's Charge of Discrimination, including his questionnaires, EEOC's correspondence, defendant's position statement, and plaintiff's rebuttal, all attached to plaintiff's initial Memorandum in Opposition. These documents clearly demonstrate Mr. Stuntz's Title VII retaliation claim were clearly within the scope of the EEOC's investigation.

Plaintiff adopts by reference and re-urges all arguments set forth in his initial Memorandum in Opposition to defendant's Partial Motion to Dismiss, (Rec. Doc. 11), as if quoted herein in its entirety.

### D.   La. R.S. 23:967

Plaintiff's Supplemental, Amending, and Restated Complaint alleges that he was fired because he reported, complained, and/or refused to violate the law, including La. R.S. 23:13, La. R.S. 23:301, *et seq.*, La. R.S. 30:2101, *et seq.*, La. R.S. 46:1641, *et. seq.*, La. R.S. 47:1951, LAC Title 33, Part XV, OSHA, CERCLA, and Title VII. Defendant does not challenge whether its violations of the LEDL, Title VII, and FMLA constitute the predicate violations of law triggering relief under La. R.S. 23:967. These claims remain viable for trial.

Defendant asserts the same argument that La. R.S. 23:967 required Mr. Stuntz to report the underlying violations of law to "anyone outside of defendant".[16] However, Subpart A specifically

---

[16] (Rec. Doc. 5-2, p. 13-14).

defines protected activity to include the "employer". This is not only clear from the statutory text, but confirmed by the jurisprudence.[17,18]

Defendant also presents a new argument that plaintiff does not allege causes(s) of action under La. R.S. 23:13, La. R.S. 30:2101, *et seq.*, La. R.S. 47:1641, *et seq.*, La. R.S. 47:1951, and LAC Title 33, Part XV, and federal law under OSHA and CERCLA. However, these serve as the underlying violations of law (the protected activity) committed by defendant, which Mr. Stuntz reported/opposed, triggering anti-reprisal relief under La. R.S. 23:967. Mr. Stuntz's Supplemental, Amending, and Restated Complaint alleges defendant violated these laws in the following respects:

> La. R.S. 23:13:
>
> Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. . . .

La. R.S. 23:13 essentially mirrors 29 USC §654 (OSHA), which requires "each employer":

> (1) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees . . .[19]

---

[17] In *Dobyns v. Univ. of La. Sys.,* 2018 CA 0811 (La. App. 1 Cir. 4/12/19), 275 So.3d 911, 925-926, and *Melancon v. Town of Amite City*, 2018 CA 0442 (La. App. 1 Cir. 9/24/18), 261 So.3d 7, 10, the Courts held that whistleblower protection may be triggered once the employee reports a violation of law **"to the employer"**.

[18] Defendants also posit the same conclusory argument that plaintiff does not allege defendant took reprisal against him because of his protected activities. However, the allegations in Paragraph 11-17 demonstrate to the contrary.

[19] OSHA works in conjunction with La. R.S. 23:13 and does not preempt state law. *See* 29 USC §653(b)(4) ("[N]othing in this chapter shall be construed to supersede or in any manner . . . or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries . . . of the employees arising out of, or in the course of, employment."); *See also Stansbury v. Sewell Cadillac-Chevrolet*, 2003 U.S. Dist. LEXIS 1682 *1, *5-11 (E.D. La. 2/4/03). Hence, it does not preempt La. R.S. 23:967 claims.

In *Rando v. Anco Insulations Inc.*, 08-C-1163 (La. 5/22/09), 16 So.3d 1065, 1086, the Louisiana Supreme Court held that the employer owes a mandatory legal duty to provide a safe working condition to every employee. In *Carr v. Sanderson Farms, Inc.*, 2016 CA 1064 (La. App. 1 Cir. 2/17/17), 215 So.3d 437, the Court reversed the Trial Court's granting of an exception of no cause of action under La. R.S. 23:13. *Carr* held that the Trial Court erred (in granting an Exception of No Cause of Action after a second amendment) and found sufficient allegations of a duty owed and breach under La. R.S. 23:13:

> Accepting these allegations as true, we find the petition states a valid cause for relief. If an employer knows or should know of a dangerous condition or person on his premises, the employer is obligated to take reasonable steps to protect its employees. Sanderson Farms was allegedly aware that Webb, an employee with a known history of violent behavior in the workplace, had threatened to 'get' Carr, a co-employee who worked the same shift and in close proximity with Webb on a daily basis. When made aware of this threat, Sanderson Farms allegedly failed to take any steps to protect Carr, and, as a result, she sustained injuries in an attack by Webb. Based upon these allegations, we find the trial court erred in sustaining the exception of no cause of action and dismissing Carr's claim against Sanderson Farms.[20] [citations omitted]

Similarly, plaintiff alleges in Paragraphs 14-16 that defendant violated its statutory duty to Mr. Stuntz and its employees to keep a reasonably safe working environment.[21] Although defendant knew there was dangerous radioactive material and mold on its premises, it failed to take steps to protect Mr. Stuntz or its employees. In response to plaintiff's complaints about the dangerous materials, defendant ordered him to unlawfully bury the radioactive pipe, hide the mold, and intentionally leave the mold as is. When plaintiff opposed and stated to defendant that it was obligated to lawfully dispose of the radioactive pipe and mold, defendant terminated him. This is a violation of La. R.S. 23:13 and OSHA.

---

[20] Worker's Compensation did not bar the plaintiff's claims because she alleged that defendant intentionally injured her because she intervened in a domestic dispute between the defendant and a co-worker.

[21] Defendant's cited case of *Graves v. Gillyard*, 35750 (La. App. 2 Cir. 4/23/02), 835 So.2d 1, 2, is inapposite. *Graves* was decided under a summary judgment standard – totally different than under the present Motion to Dismiss.

Paragraphs 14-16 of the Supplemental, Amending, and Restated Complaint also allege defendant violated La. R.S. 30:2101, *et sq.*, and CERCLA. La. R.S. 30:2117 expressly prohibits the disposal of radioactive waste "not in compliance" with law:

> A. The secretary shall promulgate and adopt rules and regulations governing the disposal of radioactive wastes . . . All commercial disposal operations of high-level or low-level radioactive wastes as defined in R.S. 30:2103 on land not owned by the state or the federal government, and all disposals of radioactive waste or NORM waste as defined in R.S. 30:2103 not in compliance with the rules and regulations adopted by the secretary pursuant to the provisions of this Chapter are prohibited.

La. R.S. 30:2119 further prohibits any person from "dispos[ing] of any source of radiation" in violation of law. LAC Title 33, Part XV, promulgated by La. R.S. 30:2117, provides the law regarding the disposal of radioactive waste. Chapter 1 provides:

> A. Except as otherwise specifically provided, these regulations apply to all persons who receive, possess, use, transfer, own, or acquire any source of radiation provided, however, that nothing in these regulations shall apply to any person to the extent such person is subject to regulation by the U.S. Nuclear Regulatory Commission.

Hence, defendant was bound to dispose of the radioactive pipe in accordance with Subchapter H, Section 460, which requires:

> A. A licensee or registrant shall dispose of licensed or registered sources of radiation only:
>     1. by transfer to an authorized recipient as provided in LAC 33:XV.465 or in LAC 33:XV.Chapters 3, 13, or 14, or to the U.S. Department of Energy;
>     2. by decay in storage;
>     3. by release in effluents within the limits in LAC 33:XV.421; or
>     4. as authorized in accordance with LAC 33:XV.461, 462, 463, or 464.
> B. A person shall be specifically licensed or registered to receive waste containing licensed or registered sources of radiation from other persons for:
>     1. treatment prior to disposal;
>     2. treatment or disposal by incineration;
>     3. decay in storage;
>     4. disposal at a land disposal facility licensed in accordance with LAC 33:XV.Chapters 3, 13, and 14; or
>     5. storage until transferred to a storage or disposal facility authorized to receive the waste

Plaintiff alleges defendant did not. Defendant was not properly licensed to bury radioactive pipe in the ground. Defendant further did not apply for or obtain a permit from the Office of Environmental Compliance, as required pursuant to Section 461. Louisiana law prohibited defendant from possessing a radioactive pipe and directing plaintiff to bury it in the ground.

As for defendant's environmental violations under federal law, CERCLA was enacted in 1980 as a **broad** remedial measure aimed at assuring "that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions."[22] (emphasis added) **Courts construe CERCLA broadly and liberally.**[23] The elements of a CERCLA violation are:

> (1) that the site in question is a 'facility' as defined in § 9601(9); (2) that the defendant is a responsible person under § 9607(a); (3) that a release or a threatened release of a hazardous substance has occurred; and (4) that the release or threatened release has caused the plaintiff to incur response costs.[24]

Plaintiff alleges each element.

The location of defendant's radioactive material is a "facility", defined by 42 U.S.C. 9601(9), as it was a "pipe" "stored" and "placed" at defendant's worksite. Defendant is also a "responsible person" under 42 USC 9607(a)(2), as the owner the worksite where the radioactive pipe was located. Plaintiff further attempted to take remedial action in response to the radioactive pipe. Pursuant to 42 USC 9601(22), the term "remedy" and "remedial action" is defined broadly as:

> [C]leanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the

---

[22] S. Rep. No. 96-848, at 13 (1980); *See also Uniroyal Chem. Co. v. Deltech Corp.*, 160 F.3d 238, 242 (5th Cir. 1998); *rehearing granted, in part, Uniroyal Chem. Co. v. Deltech Corp.*, 160 F.3d 238 (5th Cir. 1999).
[23] *Id.*; *Amoco Oil Co. v. Borden, Inc*., 889 F.2d 664, 667-668 (5th Cir. 1989).
[24] Pursuant to 42 USC 9659(h), CERCLA "does not affect or otherwise impair the rights of any person under . . . state . . . law . . . ). As a result of CERCLA's saving clause, plaintiff's state law claims are not preempted.

> disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

Plaintiff alleges he: (1) reported the radioactive pipe to defendant, (2) attempted to dispose of the radioactive pipe "legally", (3) opposed defendant's unlawful demand for him to bury the radioactive pipe, (4) was restricted from disposing the radioactive waste at a disposal facility, and (4) was fired as a result. Defendant's one (1) sentence, conclusory argument to the contrary is unavailing.

Plaintiff sufficiently alleges defendant took active measures to avoid paying taxes. La. R.S. 47:1951 provides that all corporations are subject to property taxes unless otherwise exempted. Louisiana criminalizes the "willful" failure to collect or truthfully account for payment of taxes, pursuant to La. R.S. 47:1641. Here, plaintiff alleges defendant willfully failed to account and report all taxes it owed. In Paragraph 13, plaintiff alleges defendant deliberately instructed him to manipulate and skew the assessment of defendant's property to avoid paying property taxes which it otherwise owed. These are violations of Louisiana law.

### E. La. R.S. 30:2027

Mr. Stuntz alleges he is additionally protected from retaliation/reprisal under La. R.S. 30:2027,[25] which provides:

> A. No firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency shall act in a retaliatory manner against an employee, acting in good faith, who does any of the following:
>
> (1) Discloses, or threatens to disclose, to a supervisor . . . an activity, policy, practice of the employer, or another employer with whom there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule, or regulation. . . .

---

[25] Defendant does not argue whether La. R.S. 30:2027 preempts La. R.S. 23:967. La. R.S. 30:2027 does not preempt La. R.S. 23:967 as to defendant's violations of employment discrimination laws under the LEDL, FMLA, and Title VII. As a result, plaintiff may allege causes of action under both La. R.S. 23:967 and La. R.S. 30:2027.

> (B)(2)(a) The term "action is taken" shall include firing . . . loss of job duties or responsibilities, imposition of onerous duties or responsibilities, or any other action or inaction the court finds was taken as a result of a report of an environmental violation.

**The Louisiana Supreme Court in *Borcik v. Crosby Tugs, LLC*, 2016-CQ-1372 (La. 5/3/17), 222 So.3d 672, 675-678, affirmed that protection under La. R.S. 30:2027 is broad.** A cause of action under La. R.S. 30:2027 is alleged where the employee is fired because he/she, in good faith, opposed/reported to her employer what he/she reasonably believed to be a violation of an environmental law or regulation. According to *Borcik*, "good faith" is merely "an honest belief that a violation of an environmental law, rule, or regulation occurred. **Different than from La. R.S. 23:967, under La. R.S. 30:2027, Mr. Stuntz does not need to allege or prove an actual violation of law.** As set forth by *Cheramie v. J. Wayne Plaisance, Inc.*, 595 So.2d 619, 623 (La. 1992), even the "threat of potentially illegal activity" is protected under La. R.S. 30:2027.[26]

In *Menard v. Targa Res. LLC*, 2019 U.S. LEXIS 152538 *1, *5-6 (M.D. La. 9/6/19), the Court held that the plaintiff alleged a cause of action under La. R.S. 30:2027. The plaintiff alleged a "reasonable inference" that the defendant violated an environmental law when his supervisor instructed him to "tamper with water samples to deceive regulatory authorities." The plaintiff also alleged he was terminated six (6) days after expressing his "concerns" about his supervisor's instructions to defendant. *Menard* held these allegations were sufficient under Fed.R.Civ.P. Rule 8 and denied the defendant's motion to dismiss.[27]

Similarly, Mr. Stuntz alleges defendant was committing violations of environmental law(s) by burying dangerous radioactive pipe in the ground without a permit and exposing he and other

---

[26] *See also Menard v. Targa Res. LLC*, 2019 U.S. LEXIS 152538 *1, *5-6 (M.D. La. 9/6/19).
[27] *Menard* also rejected the defendant's argument that the plaintiff's job duties required him to report environmental regulations, as it could not be resolved on a Fed.R.Civ.P. Rule 12(b)(6) Motion.

employees to hazardous mold, *supra*. Mr. Stuntz reported these environmental violations in good faith and directly to his supervisor/defendant's CEO, Wright. In Paragraph 17 and 18, plaintiff alleges he was terminated because of his protected activities.

### III. CONCLUSION

Mr. Stuntz submits he plausibly and sufficiently sets forth his claims on the face of his Supplemental, Amending, and Restated Complaint, as set forth in (Rec. Doc. 11) and this Memorandum in Opposition. Defendants' Motion should be denied.

Respectfully submitted,

By: __/s W. Brett Conrad, Jr. _____
Jill L. Craft, T.A., La. Bar Roll #20922
W. Brett Conrad, Jr., La. Bar Roll #37639
Jill L. Craft, Attorney at Law, LLC
330 Government Street
Baton Rouge, Louisiana 70802

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Memorandum in Opposition to Defendant's Partial Motion to Dismiss upon trial counsel of record for all parties hereto using the Court's electronic filing system, CM/ECF, on this 21st day of July, 2020.

Baton Rouge, Louisiana, this 21st day of July, 2020.

____/s W. Brett Conrad, Jr. _____