# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Stuntz | Civil Action No 6:20-cv-00182 |
| Versus | Judge Michael J Juneau |
| Wright Enrichment Inc | Magistrate Judge Carol B Whitehurst |

## REPORT AND RECOMMENDATION

Pending before the Court, on referral from the district judge, is a Motion To Dismiss For Failure To State A Claim filed by Defendant, Wright Enrichment Inc. ("Wright") [Rec. Doc. 20], Plaintiff, Douglas Stuntz's, Memorandum in Opposition [Rec. Doc. 24] and Defendant's Reply [Rec. Doc. 25]. For the reasons that follow, the Court will recommend that Wright's motion be granted in part and denied in part.

## I.     BACKGROUND

This action arises out of an employment relationship. Plaintiff was hired as a Plant Manager at Wright's facility located in Crowley, Louisiana, on June 6, 2017. *R. 14, at ¶ 5.* In January, and March of 2019, Plaintiff had two kidney procedures for which he requested leave time off from work from Wright. *Id.* Plaintiff alleges that at the time of his kidney procedures Wright never offered or discussed FMLA with him and failed to engage in any interactive process with him related to FMLA. *Id. at ¶5a.*

Upon his return to work on March 4, 2019, Plaintiff submitted a written FMLA request form related to his wife's uncurable disease known as "Susac's Syndrome." He alleges his wife is an individual with a disability within the meaning and intent of the ADA and Louisiana's anti-discrimination laws with whom Plaintiff is "affiliated," "associated," and has a "close relationship."[1] *Id. at* ¶6. Plaintiff alleges that since November 2018, he has kept Wright and the HR manager informed of his wife's disability but was never offered FMLA and disability accommodations. *Id. at* ¶7.

After making the March 4, 2019 FMLA request, Wright questioned Plaintiff in a meeting about the FMLA request and his surgical procedure and then terminated him. *Id at* ¶ 8. Wright referenced Plaintiff's submission of formal FMLA paperwork earlier that day, his medical diagnosis and procedure, his wife's disability, and Plaintiff's refusals to violate the law as reason for his termination. Wright falsely contended that Plaintiff, who had never been written up or counseled, had "poor work performance."[2] *Id.* Plaintiff was replaced by a 35-year old, non-disabled, and non-medically impaired male. *Id. at* ¶ 6.

Plaintiff alleges that as a result of his requests for FMLA and because of his affiliation with his disabled wife, Wright became angry with him and repeatedly

---

[1] Plaintiff alleges his wife has suffered 32 strokes, brain swelling, hearing and vision loss, extreme swelling of her body, seven (7) spinal fractures, loss of liver function, and inability to balance and ambulate. *Id.*
[2] Plaintiff alleges he was never counseled, reprimanded, written-up, or disciplined and never confronted about "poor work performance" prior to his termination. Rather, he had excellent reviews and enjoyed stellar ratings. *Id. at* ¶9.

questioned him in a threatening manner as to whether he actually needed to take time off from work. Wright repeatedly requested Plaintiff to obtain his and his wife's medical records for his "personal" inspection because, according to Wright, he did not believe Plaintiff's wife was actually disabled or that Plaintiff had a serious health condition. Plaintiff alleges that Wright ordered HR Director Hebert to obtain all of Plaintiff's and his wife's medical records, in violation of HIPAA. *Id. at ¶ 7.* He alleges that Wright's harassing and discriminatory comments regarding Plaintiff's wife's disability and Plaintiff's health condition were made throughout the workplace in an open and obvious fashion, including to Hebert, and several of Plaintiff's subordinates and co-workers. *Id. at ¶7a.*

Plaintiff alleges that in 2018, Wright also fired a former payroll clerk at the Lafayette office, Cyndle Rowe, while she was on FMLA leave. He alleges that Wright advised the HR Manager to fire Rowe because he "did not want her back" as she "now has two (2) children" including a newborn child - the reason Rowe was on FMLA leave. *Id. at ¶ 10.* Plaintiff also alleges in January, 2019 Wright fired an employee, KT, because KT was disabled with an incurable condition and another employee because he was disabled with severe diabetes. *Id.* During a meeting with Plaintiff, Wright openly disparaged the employee's diabetes in a derogatory and threatening manner, claiming the employee was not "working out well," his diabetes

caused him to be "slow," and that he suffered from a "problem." Wright then instructed Plaintiff to fire the employee because of his diabetes. *Id.*

Plaintiff alleges that Wright made numerous racist and sexist comments about Plaintiff's co-employees because of their sex and race on a regular basis. He alleges that on or about November 1, 2018, Wright instructed Plaintiff that he "couldn't hire blacks, gays, or lesbians" because "black women didn't function well in the workplace and [Wright] didn't approve of lesbians and queers" and that "blacks [are] idiots." *Id.* Also, Wright referred to Hispanics as "Chihuahuas and gringos" and African Americans as "monkeys and niggers." *Id.* Wright required him to "fire" a female contract employee because "women don't belong in maintenance," "maintenance was for men." *Id. at ¶ 12.* Wright imposed a racist mandate in the workplace ordering that Plaintiff only hire employees who are "white, male, 35-45 years old," but "Mexicans" may be hired depending on the job position. *Id. at ¶ 11.* Plaintiff alleges that throughout his employment with Wright, he repeatedly reported and complained about the sex and race-based discrimination and harassment, violations of the LEDL and Title VII in his working environment. *Id. at ¶11.*

Plaintiff further alleges that during the summer of 2018, Wright ordered him, under penalty of termination, to tell Parish tax authorities that buildings marked "DEMO" were not being used, when, in fact, they were actively being used and should have been taxed. He alleges Wright did so to avoid paying taxes on the

buildings as part of the property. *Id. at ¶ 13.* Plaintiff alleges such actions violate La. R.S. 47:1641, 47:1642, 47:1702, et seq., and 47:1951, et seq. He further alleges he opposed and reported the unlawful request and informed Wright that his requests were illegal and violated the law, to no avail. *Id.*

Plaintiff also alleges that during the summer of 2018, he discovered that radioactive drill pipe was on Wright's property. After reporting this to Wright, Plaintiff was ordered to bury the radioactive drill pipe on the property because Wright did not want to have to pay someone to legally and properly remove it. Plaintiff advised Wright that "he could not do that" and Wright would need to find a way to "legally" dispose of the radioactive material. Wright continued to allow the radioactive pipe to remain on its property without removing and disposing of it in compliance with law. Plaintiff contends that this violates state and federal law, including La. R.S. 23:13, La. R.S. 30:2002, et seq., La. R.S. 30:2101, et seq., LAC Title 33, Part XV, Radiation Protection, the Occupational Safety and Health Standards Act ("OSHA"), 29 U.S.C. §651, et seq., the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §9602 et seq., and the Clean Air Act ("CAA"), 42 U.S.C. §7401, et seq. *Id. at ¶14.*

Plaintiff alleges that during the same time period, he audited Wright's premises and discovered mold on the ceiling of the Research and Development building. Plaintiff reported and advised Wright of the discovery of the hazardous

mold and stated that he and his co-employees could not continue to work in the area. Wright refused to remediate the mold and instead ordered Plaintiff to either "hid[e]" the mold or have employees and/or hire temporary workers to cover up and remove the mold. After Plaintiff refused, Wright failed to properly dispose of the hazardous pipe and mold—actions which Plaintiff alleges violated La. R.S. 23:13 and La. R.S. 30:2002, et seq. *Id. at ¶¶15, 16.*

Plaintiff sets out his claims as: (1) FMLA interference; (2) FMLA retaliation; (3) ADA/LEDL disability discrimination; (4) ADA/LEDL harassment; (5) Title VII retaliation; (6) La.R.S. 23:967 (Louisiana "whistleblower") reprisal; and (7) La.R.S. 30:2027 (Louisiana environmental "whistleblower")  reprisal. *R. 22, p. 1.*

## II.    LEGAL STANDARD RULE 12(b)(6)

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract v. Touchstone Props., Ltd*., 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (internal citations omitted). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010).

When deciding a 12(b)(6) motion for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(c) motion for judgment on the pleadings, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 255–57 (5th Cir. 2009). If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir. 2007), the claim must be dismissed.

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc*., 394 F.3d 285, 288 (5th Cir. 2004).

## III.   LAW AND ANALYSIS

In its motion, Wright contends that Plaintiff's claims should be dismissed under Rule 12(b)(1) and 12(b)(6) for: (1) Failure to exhaust administrative remedies for his Title VII and ADA failure-to-accommodate claims; (2) ADA Failure to accommodate for "associational discrimination;" (3) ADA and LEDL Harassment; (4) ADA and LEDL Retaliation; (5) La.R.S. 23:967; and (6) Louisiana and Federal statutes and regulations. *R. 20-1.*

Plaintiff clarifies his claims in his opposition memorandum initially stating that he has no claims for ADA failure-to-accommodate. *R. 24.* Plaintiff further represents his claims are: (1) FMLA interference, (2) FMLA retaliation (3) ADA disability-based discrimination and harassment; (4) Title VII retaliation; (5) reprisal under La. R.S. 23:967, and; (6) retaliation/reprisal under La. R.S. 30:2027. The Court will address Plaintiff's claims as follows.

A. Failure to Exhaust Administrative Remedies

    *1. Title VII Retaliation*

       Wright does not contest that Stuntz timely filed an EEOC charge as to his FMLA and ADA claims; rather, Defendant contends that Plaintiff's EEOC charge "failed to allege any opposition to alleged race, sex or sexual orientation discrimination." *R. 20-1 at p. 7*. Defendant cites the Louisiana Commission on Human Rights ("LCHR")/EEOC Charge of Discrimination, which was executed by Stuntz on June 27, 2019 and which is attached to the memorandum. *R. 20-2*. Defendant contends that Plaintiff failed to exhaust the administrative process with respect to his claim for Title VII retaliation. In his opposition, Stuntz argues that if the Court considers his Charge of Discrimination, it must convert the instant motion to one for summary judgment and also consider the March 8, 2019 letter to the Defendant from Plaintiff's attorney, Plaintiff's March 12, 2019 Intake Questionnaire, EEOC correspondence to the Plaintiff dated June 21, 2019 acknowledging the intake questionnaire, Defendant's December 2, 2019 position statement, and Plaintiff's undated and untitled rebuttal, which are attached to his opposition memorandum. *R. 24*.

       After review of the record, this Court concludes the Charge of Discrimination is considered part of the pleadings because Plaintiff refers to it in his amended complaint and because the information contained therein is central to Plaintiff's

claims, *R. 10-2, ¶ 19. See Causey v. Swell Cadillac-Chevrolet, Inc*. 394 F.3d 285, 288 (5th Cir. 2004); *Werner v. Dept. of Homeland Sec*., 441 F. App'x 246, 248 (5th Cir. 2011). Additionally, the Charge of Discrimination is a matter of public record that can be judicially noticed in considering a 12(b)(6) motion. *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994); *Wilson v. Lockheed Martin Corp*., 2003 WL 22384933, at *2 (E.D. La. Oct. 15, 2003). Accordingly, the consideration of the Charge of Discrimination does not convert this motion into one for summary judgment and the Court cannot consider Plaintiff's other documents placed at issue.

Even assuming *arguendo* that Plaintiff's documents at issue could be admitted, which they cannot, neither the Intake Questionnaire nor Defendant's response addresses a claim of retaliation for opposing discrimination based on race, sex or sexual orientation. *R. 24-1*. Moreover, with the exception of Defendant's response, the documents were submitted prior to Stuntz's formal administrative charge on June 27, 2019. Any claims stated therein that were not included in the administrative charge, or that cannot reasonably be expected to grow out of the charge, must be considered waived.  *Cargo v. Kansas City Southern Ry. Co*., 2010 WL 2804057, at *3 (W.D.La.,2010) (citing *Novitsky  v. American Consulting Engineers, L.L.C*., 196 F.3d 699, 702 (7th Cir.1999) (stating that under Title VII, "it is the charge rather than the questionnaire that matters. Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation.").

In *McClain v. Lufkin Indus., Inc*., the Fifth Circuit encapsulated Title VII's exhaustion requirement as follows,

> Title VII requires employees to exhaust their administrative remedies before seeking judicial relief. Private sector employees must satisfy this requirement by filing an administrative charge with the EEOC. The charge enables the EEOC to investigate and, if appropriate, negotiate a resolution with an employer. Only after administrative efforts terminate may the employee sue the employer in federal court.

> Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation. Nevertheless, competing policies underlie judicial interpretation of the exhaustion requirement. On one hand, the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." On the other hand, the "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims." To reconcile these policies, th[e] [Fifth Circuit] construes an EEOC complaint broadly but in terms of the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." [The courts] use a "fact-intensive analysis" of the administrative charge that looks beyond the four corners of the document to its substance. In sum, a Title VII lawsuit may include allegations "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission."

*McClain v. Lufkin Indus., Inc*., 519 F.3d 264, 273 (5th Cir. 2008). Therefore, although the actual scope of an EEOC investigation does not determine whether a claim is exhausted, the investigation of a particular claim creates a strong inference that such a claim was presented. *Clark v. Kraft Foods, Inc*., 18 F.3d 1278, 1280 (5th Cir. 1994).

Title VII of the Civil Rights Act of 1964—in addition to offering protections from discrimination on the basis of race, color, religion, sex, or national origin—offers further protection against retaliation from employers against employees who oppose a violation of Title VII. The elements of a retaliation claim under Title VII are (1) that the employee is engaged in a protected activity by either opposing a perceived violation of Title VII (the "Opposition Clause") or by directly participating in an action against an alleged violation (the "Participation Clause") by making a charge, testifying, assisting, or in any manner participating in a Title VII investigation, proceeding, or hearing; (2) they experience an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. 42 U.S.C. § 2000e-3. In other words, retaliation protection under Title VII protects employees from being retaliated against because they either opposed discriminatory actions based on race, color, religion, sex, or national origin or because of their participation in any proceeding against such forms of discrimination.

In his Charge of Discrimination, Stuntz checked the boxes for "retaliation," "age" and "disability." Plaintiff's EEOC Charge states nothing about retaliation under Title VII. Nor does it make even a reference to any activity related to opposing race, sexual orientation and/or sex discrimination. Construing the EEOC charge in its broadest reasonable sense, the Court is not persuaded that any potential claim for

retaliation under Title VII reasonably could be expected to have grown out of the allegations in Plaintiff's charge for retaliation, age and disability discrimination. Therefore, Plaintiff's Title VII claim for retaliation is subject to dismissal for failure to exhaust EEOC remedies. The LEDL, however, does not include an exhaustion requirement. *Walton-Lentz v. Innophos, Inc*., 476 Fed. Appx. 566, 570 (5th Cir. 2012). Thus, Plaintiff's retaliation claim under the LEDL is not subject to dismissal on that basis.

### 2. *ADA Failure to Accommodate*

As previously noted, Plaintiff states he has asserted no claim for ADA failure to accommodate. Therefore, Defendant's motion to dismiss this claim is moot.

### B. ADA and LEDL Claims

Plaintiff alleges that he maintains a claim for disability-based discrimination and harassment under the ADA and the LEDL based on his association with a qualified individual protected—his wife.[3] Defendant contends that the Fifth Circuit does not recognize a claim for "associational discrimination" based on disability. *R. 20, p. 10.* In making this argument, Defendant cites *Grimes v. Wal-Mart Stores Tex. L.L.C.,* 505 F. App'x 376, 380 n.1 (5th Cir. 2013, which stated the court "has not explicitly recognized a cause of action for discrimination based on association with a handicapped individual." Since *Grimes*, the Fifth Circuit has reaffirmed its

---

[3] Disability-based discrimination and harassment claims under the LEDL, La. R.S. 23:323, are analyzed using the same framework with ADA claims. *Wyerick v. Bayou Steel Corp*., 887 F.3d 1271, 1274 (5th Cir. 1989).

13

position in *Spencer v. FEI, Incorporated*, 725 Fed. App'x. 263, 267 (5th Cir. 2018) ("We agree with [*Grimes*] that this court has not 'explicitly recognized a cause of action for discrimination based on association with a handicapped individual, nor have we described what such a claim requires.'").

The basis for a claim of "associational discrimination" is found in an ADA provision that prohibits the following conduct:

> excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.

See 42 U.S.C. 12112(b)(4). As concluded by the courts in *Grimes* and *Spencer*, if such a cause of action exists,

> A prima facie case of associational discrimination would require that [ ] Plaintiff show (1) [his] qualification for the job, (2) an adverse employment action, (3) the employer's knowledge of the employee's disabled relative, and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action. [4]

*Id.* at 380. Therefore, assuming such a claim is viable, the Court will address Plaintiff's claim as follows. *See Lampkin v. Ajilon Professional Staffing*, 2013 WL 6200203, at *9 (S.D.Tex.,2013).

Despite citing both *Grimes* and *Spencer*, Defendant does not address the elements of associational discrimination, instead maintaining that any claim must be

---

[4] The *Grimes* court further cautioned, however, that its "opinion should not be construed as recognizing a cause of action for associational discrimination based on disability." *Grimes* at 380 n. 1.

based on Plaintiff's own disability or disabilities and not his wife's disability. Defendant cites *Gowesky v. Singing River Hosp. Systems*, 321 F.3d 503, 509 (5th Cir. 2003), in support of its argument. As the court in *Gowesky* did not address associational discrimination disability, the Court finds the case inapposite to the instant issue.

Nonetheless, it is undisputed that Plaintiff's allegations suffice to establish the elements necessary for a plausible associational discrimination disability claim. Plaintiff alleges his wife is "a qualified individual with a disability ... [who] has an actual impairment, has a record of an impairment, and/or was regarded by the defendant as disabled." *R. 14, ¶ 3.* On March 4, 2019, Defendant harassed him and fired him from his position as Plant Manager because of his association with his disabled wife. *Id. at ¶¶ 3-9.* He alleges that "[a]s a result of [his] requests for FMLA and because of his affiliation with his disabled wife, defendant... repeatedly questioned [him], in a threatening manner, whether [he] actually needed to take off work." Specifically, he alleges he was subjected to unwelcome acts by defendant constituting his wife's disability-based harassment and discrimination "[b]eginning in November 2018 and continuing thereafter until [he] was terminated. *R. 14, ¶ 7a. Id.* Thus, Plaintiff alleges Defendant knew he was associated with his disabled wife and as a result, subjected him to harassment. Based on these allegations, Plaintiff has stated enough facts to state a claim to relief that is plausible on its face for

disability-based discrimination and harassment arising from his association with his wife.

C. Louisiana Whistleblower, 23:967(A) Claims

Plaintiff alleges a claim of unlawful reprisal pursuant to La. R.S. 23:967, contending that he was terminated as a result of reporting and opposing Defendant's violations of federal and state laws. Defendant argues that Plaintiff's allegations cannot meet the elements of his whistleblower claim as he "does not allege that he 'disclosed' or 'threatened to disclose' an unlawful workplace act or practice to anyone outside of Defendant." *R. 20, p. 14.* Defendant further contends, "[t]o be protected under the LWS, an employee must 'blow the whistle' by either disclosing or threatening to disclose the unlawful practice to someone or some authority outside of Defendants." *Id.* In its reply, Defendant repeats the foregoing and adds, "Merely advising the employer of a violation is insufficient to trigger a violation of 23:967.... advising the employer of an alleged violation is a distinct element from disclosing or threatening to disclose the prohibited practice." *R. 25, pp. 5-6.*

"The Louisiana whistleblower statute, La. R.S. 23:967, targets serious employer conduct that violates the law. A civil action is available as a remedy when an employer retaliates against an employee for making disclosures protected under the statute. La. R.S. § 23:967 provides:

An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

In *Hale v. Touro* Infirmary, 886 So.2d 1210, 1215 (La.App. 4 Cir. 2004), the

court analyzed the statute's statutory construction and interpretation under article 9

of the Louisiana Civil Code and held,

> [W]hat is clear is that we are bound by the language of La. R.S. 23:967, which provides that an employer may not retaliate against an employee who has notified it of a workplace practice in violation of law ***and who either refuses to participate in the practice* or *who threatens to publicize the practice*....** the Whistleblower Statute only offers protection to a specific class of employees: those employees who face "reprisals" from their employers based solely upon an employee's knowledge of an illegal workplace practice and his refusal to participate in the practice *or* intention to report it.

*Id.* at 1215. (Emphasis added). *See also Williams v. Hospital Service District of West*

*Feliciana Parish, Louisiana*, 2017 WL 4335023, at *3 (M.D.La., 2017) ("In order

to state a prima facie claim under the Louisiana Whistleblower Statute, Plaintiff

therefore must establish that he possessed the knowledge that a certain workplace

practice amounted to a violation of state law at the time he refused to participate in

the practice or informed the employer of his intention to report the practice to the

authorities."). More recently, in *Jones v. Wells Fargo Bank, N.A.*, 2019 WL

4601602, *13 (E.D.La., 2019), the plaintiff alleged that she notified her employer of

practices by her branch manager which conflicted with the Equal Credit Opportunity Act. In determining whether plaintiff had established a claim under La. R.S. 23:967, the court looked to *Hale,* stating,

> To prevail, [the plaintiff] must establish that (1) [her employer] violated the law through a prohibited workplace act or practice; (2) she advised [her employer] of the violation; (3) she then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) she was fired as a result of her refusal to participate in the unlawful practice or threat to disclose the practice.

*Id*. at 1216.

In his opposition memorandum, Plaintiff argues that his allegations in Paragraphs 11-17 of his Amended Complaint establish that he reported to Defendant and opposed its numerous violations of state law. *R. 10, ¶¶ 11-17.* The Court also notes that Plaintiff alleges he refused to participate in the allegedly unlawful practices. *Id. at ¶¶ 12, 14, 15.* As noted by Plaintiff, his claims are in accord with Subparts (1) and (3) of the statute. Defendant, however, limits its opposition to Subpart (2) of the statute in its argument that Plaintiff must have disclosed the alleged violations to a "third party" or "public body." Plaintiff's allegations are encompassed in Subparts (1) and (3) which require no such outside disclosure. *See Hale* ("the two subsequent subsections (Subparts 2 and 3) prohibit reprisal against employees who not only know of the violation and report it to their employers, but who also testify before public bodies or simply refuse to participate in the illegal activity.")

The Court has made a thorough review of the jurisprudence cited by Defendant in support of its position that notice to a third party (other than the employer) is required under 23:967. The Court finds that Defendant's representations to the Court are less than forthright and constitute (at best) mis-interpretations of the jurisprudence.[5]  In this case, Plaintiff alleges that he advised Defendant of his opposition and his refusal to comply with its numerous violations of state law, including La. R.S. 23:13, La. R.S. 23:332, La. R.S. 30:2101, et seq., La. R.S. 47:1641, 47:1951, and LAC Title 33.  Such allegations are sufficient under statute and under the case law.

Plaintiff also alleges he reported/opposed defendant's violations of federal law under Subpart (3), including Title VII, OSHA and CERCLA. Defendant argues that the statute applies to violations of state law only, and Plaintiff's allegations as to the federal violations of Title VII, OSHA and CERCLA should be dismissed.

While Subpart (1) of the statute clearly states "violation of *state* law," Subpart (3) refers only to "violation of law." La. R.S. 23:967 (1), (3). In *Hale*, the court explained, "[a]lthough the language of the statute is inconsistent, the interpretation

---

[5]  For example, Defendant cites *Hale*, but quotes only a portion of that court's holding: "[A]n employer may not retaliate against an employee who . . . threatens to publicize the practice"). Defendant's citation in *Chauvin v. National Gypsum Service*, 2014 WL 994910, at *5 (E.D.La.,2014), "[T]he plaintiff does not allege that he threatened to disclose the alleged theft to any authority," was related to whether or not a co-employee's action constituted an unlawful workplace act or practice. Finally, as to *Goulas v. LaGreca*, 945 F. Supp. 2d 693, 703 (E.D. La. 2013), Defendant represents that the *Goulas* court held that "[p]laintiff never threatened to disclose the alleged violation to a third party ...." Upon reviewing the case, the quoted language refers to the defendants' argument. Moreover, the issue before the court in *Goulas* was whether plaintiff's disclosure to his wife of his co-workers' use of illegal drugs on the premises met the disclosure requirement to his employer.

that is supported by the structure and that fits best into the framework of the statute is one that holds the statute to its most specific terms, i.e., violations of state law only." *Hale* at 1216. *See also Beard v. Seacoast Elec., Inc*., 951 So.2d 1168, 1170–71 (La.App. 4 Cir. 1/24/07) ("Although the language of the statute is inconsistent, the interpretation that is supported by the structure and that fits best into the framework of the statute is one that holds the statute to its most specific terms, i.e., violations of state law only."). In *Wilson v. Tregre*, 787 F.3d 322 (5th Cir. 2015), the Fifth Circuit agreed with the foregoing, holding that 23:967 "is only triggered by violations of Louisiana law, not federal law." *Id*. at 327. *See Diaz v. Superior Energy Services, LLC*, 2008 WL 3077071 at * 12 (E.D. La. Aug. 4, 2008)(citing *Beard v. Seacoast Elec., Inc*., 951 So.2d 1168, 1170) (La. App. 4 Cir. 1/24/07).

Finally, Defendant argues that Plaintiff does not allege causes(s) of action under La.  R.S. 23:13, La. R.S. 30:2101, et seq., La. R.S. 47:1641, La. R.S. 47:1951, and LAC Title 33, and federal law under OSHA and CERCLA. Plaintiff clarifies in his opposition that these alleged statutes serve as the underlying violations of law committed by Defendant which Plaintiff reported/opposed, and which trigger anti-reprisal relief under La. R.S. 23:967. In the reply memorandum, Defendant recognizes Plaintiff's clarification that he has no private cause of action for purported violations of these statutes and makes no further objection.[6]

---

[6]  The Court has found that 23:967 is not triggered by violations of federal law under OSHA and CERCLA.

The Court finds that the allegations in the Amended Complaint support a finding that Plaintiff has established violations of the following state law statutes in order to allege a plausible claim under La. R.S. 23:967: La.  R.S. 23:13, *R. 10.  ¶¶ 14-16*; La. R.S. 30:2101, et seq., *id.,  ¶¶ 14*-16; La. R.S. 47:1641, i*d.,  ¶ 13*; La. R.S. 47:1951, i*d.,  ¶ 13*; and LAC Title 33, *id.,  ¶¶14, 16, 17.*

D. Louisiana Environmental Whistleblower Claims

Plaintiff also asserts claims pursuant to the Louisiana Environmental Whistleblower Act ("LEWA"), La. Rev. Stat. 30:2027. The LEWA provides in pertinent part as follows:

> A. No firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency shall act in a retaliatory manner against an employee, acting in good faith, who does any of the following:
>
> (1) Discloses, or threatens to disclose, to a supervisor *or* to a public body an activity, policy, practice of the employer, or another employer with whom there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule, or regulation.
>
> (2) Provides information to, or testifies before any public body conducting an investigation, hearing, or inquiry into any environmental violation by the employer, or another employer with whom there is a business relationship, of an environmental law, rule, or regulation.

La. Rev. Stat. 30:2027.

Accordingly, the five elements required for a cause of action under LEWA are: (1) employee acts in good faith; (2) employee reports, or threatens to report a

violation; (3) employee reasonably believes the activity, policy, or practice undertaken by his employer, or another employer with whom there is a business relationship with his employer, is a violation of an environmental law; (4) employee reports or threatens to report the violation to a supervisor *or* to a public body of the employer; *and* (5) employer acts in retaliatory manner because the employee reported or threatened to report a violation. *Collins v. State ex rel. Dept. of Natural Resources*, 118 So.3d 43, 49 (La. App. 1 Cir. 5/30/13)(Emphasis added).

The purpose of LEWA is to protect employees from retaliatory or adverse employment action by employers for reporting possible environmental violations. *Id.* An employee is not required to know specifically which law is being violated as long as the employee acts in good faith and reasonably believes there is a violation. *Id*. "The term 'good faith' as used in R.S. 30:2027, means an employee is acting with an honest belief that a violation of an environmental law, rule, or regulation has occurred." *Borcik v. Crosby Tugs, LLC*, 858 F.3d 936, 937 (5th Cir. 2017). Upon considering the aforesaid elements, the Court finds that the allegations which demonstrate the plausibility of Plaintiff's claims under La. R.S. 23:967 also establish that Plaintiff's claims under La. R.S. § 30:2027 are based on his reasonable belief that Defendant was in violation of an environmental law, rule, or regulation.

Defendant contends because La. R.S. § 30:2027 is a more specific statute and therefore supersedes La. R.S. § 23:967 which is a general statute, Plaintiff's claims

under § 23:967 should be dismissed. Under well-established principles of statutory construction, where there is a general statute and a specific statute addressing the same subject matter, the more specific statute should govern. *Barber v. Marine Drilling Management, Inc*., 2002 WL 237848 (E.D.La.2002)). The scope of § 30:2027 is more specific than § 23:967. *Collins*, 118 So.3d at 52. However, because § 30:2027 does not address the same subject matter as that which is addressed under § 23:967 and because Plaintiff alleges non-environmental state claims in addition to his environmental claims, the Court finds that Plaintiff has alleged plausible claims under both the LWS and the LEWA.

## IV.    CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that Defendant's Motion To Dismiss be **GRANTED IN PART** as to Plaintiff's Title VII retaliation claim based on failure to exhaust his administrative remedies and **DENIED IN PART** as to Plaintiff's claims for ADA/LEDL disability-based associational discrimination and harassment; La.R.S. 23:967 reprisal; and, La.R.S. 30:2027 reprisal. **IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss an ADA Failure to Accommodate claim be **DENIED AS MOOT**.[7]

---

[7]  In the reply memorandum, Defendant contends that the Court should dismiss Plaintiff's claims under the FMLA for interference. Defendant, however, has never addressed Plaintiff's FMLA claims for interference and retaliation.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** this 9th day of September, 2020 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE